Oct. 7. 2013  3:42PM                                    No. 0086   P. 5

*Cause no : 2013 DCV3792*
*327TH District Court*

*FILED*
*NORMA L. FAVELA*
*DISTRICT CLERK*

### EL PASO COUNTY DISTRICT COURT
### 500 EAST SAN ANTONIO AVENUE
### EL PASO TEXAS 79901

2013 OCT -4  PM 3: 27

EL PASO COUNTY, TEXAS

BY _____ DEPUTY

Eric Flores , pro se petitioner
General Delivery , 8401 Boeing Dr.,
El Paso Texas 79910

Vs.

Associate Dean of Students and Director of Judicial Affairs Ryan Holmes ,
respondant , 500 W. University Avenue , El Paso texas 79968

Secretary Assistant of Director of Judicial Affairs Julie Cooper , respondant ,
500 W. University Avenue , El Paso Texas 79968

President of University Daina Natalicio , respondant
500 W. University Avenue El Paso texas 79968

---

## JUDICIAL NOTICE OF ADJUDICATIVE FACTS

Petitioner Eric Flores hereby gives judicial notice of adjudicative facts that an

injunction against formal proceedings has been filed in the El Paso County District

Court seeking to stay the proceedings of any disciplinary hearing that may ensue

resulting from allegations against petitioner for university rule violation.

True and correct copies of the injunction against formal proceedings have been hand

deliveried to the respondant in this foregoing injunction against formal proceedings

as required by law.(Attached as exhibit (A) and incorporated by reference).

The disciplinary formal proceedings are hereby stayed until the district court rules

on the injunction in accordance with the laws of the State of Texas.

EL PASO COUNTY DISTRICT COURT
500 EAST SAN ANTONIO AVENUE
EL PASO TEXAS 79901

Eric Flores , pro se petitioner
8401 Boeing Dr., General Delivery
El Paso Texas 79910

Vs.

Julie Cooper , respondant
500 W. University Avenue
El Paso Texas 79968

Ryan Holmes , respondant
500 W. University Avenue
El Paso Texas 79968

Daina Natalicio , respondant
500 W. University Avenue
El Paso Texas 79968

---

## INJUNCTION AGAINST INFORMAL PROCEEDING SUIT

(1)Table of Contents
(2) Opinions Below
(3) Parties of Interest
(4) Questins Presented
(5) Constitutional Statutes
(6) Jurisdictional Statement
(7) Statement of the Case
(8) Statement of Facts
(9)Summary of Argument
(10) Argument
(11) Conclussion and Prayer

Pleaded By:
Eric Flores , pro se petitioner
8401 Boeing Dr., General Delivery
El Paso Texas 79910

(2) Opinions Below

    (a) On March 30 , 2012 the Associate Dean of Student and Director of Judicial Affairs named Ryan Holmes for the University of Texas at El Paso retaliated against the petitioner Eric Flores for seeking the President of the Universities level of attention to address a professors academic dishonesty.

    (b) On August of 2012 the petitioner Eric Flores filed a discrimination compliant with the United States Department of Education to complian against a faculty member named Ryan Holmes of an educational institution named University of Texas at El Paso that is a recieptant of federal financial assistance for retaliateing against the petitioner for seeking the President of the Universities level of attention to address a professors academic dishonesty.

    (c) On October 3 , 2013 the faculty member named Ryan Holmes retaliated against the petitioner for submitting a discrimination compliant with the United States Department of Education by pursueing an additional disciplinary charge against the petitioner without just cause.

(3) Parties of Interest

(i)Associate Dean of Student and Director of Judicial Affairs named Ryan Holmes is

a party of interest whom principle place of business is designated at 500 W.

University Avenue , Union East Room 303 , El Paso Texas 79968.

(ii) Julie Cooper administrative assistant for the Director of Judicial Affairs is a

party of interest whoms principle place of business is designated at 500 W.

University Avenue , Union East Room 303 , El Paso Texas 79968.

(iii) University President Daina Natalicio is a party of interest whoms principle

place of business is designated at 500 W. University Avenue , Administrative

Building Room 505 , El Paso Texas 79968.


(4) Question Presented

(a) Whether Ryan Holmes and other University community members retaliated

against the petitioner Eric Flores for seeking the President Daina Natacilios'

level of attention to address an instructors academic dishonesty in violation

of Code of Federal Regulation and Title VII of the Civil Rights Act.

(b) Whether Ryan Holmes and other University community members treated the

petitioner differently from other new students in determineing whether the

petitioner satisfies any admission , enrollment , quota , eligibility ,

membership or other requirement or condition which individuals must meet

in order to be provided any services , financial aid , or other benefit provided under the program in violation of the Code of Federal Regulations &80.3(b)(v)

(c) Whether Ryan Holmes and other University community members denied the petitioner Eric Flores an opportunity to participate in the program through the provision of services that were otherwise entitled to the petitioner as an opportunity for new students which is different from that afforded to other students under the same program in violation of Code of Federal Regulation 80.3 (b)(vii).

(d) Whether Rayn Holmes and other University community members utilized criteria or methods of administration which subject the petitioner Eric Flores to discrimination in violation of Code of Federal Regulations for receiptance of financial assistance and Title VII of the Civil Rights Acts.

(e) Whether Ryan Holmes and other university community members retaliated against the petitioner for pusueing the discrimination compliant process with the United States Department of education in violation of the Civil Rights Act and its implementing regulations at 34 CFR 100.


(5) Constitutional Statutes

Section 15.002 of the Civil Practice and Remedies Code

Civil Rights Act and its implementing regulations at 34 CFR 100

Code of Federal Regulation & 80.3 prohibits educational institutions that are recieptance of federal financial assistance from discriminateing against an

individual by utilizeing criteria or methods of administration which subject an individual to discrimination.

Code of Federal Regulation & 80.3.3(b)(vii) prohibits denieing an individual opportunity to participate in the program through the provision of services that was otherwise entitled to the individual as an opportunity which is different from that afforded to other students under the same program in a educational institution that is a resieptance of federal financial assistance

Code of Federal Regulations &80.3(b)(v) prohibits the treatment of an individual differently from other new students in determineing whether the complainant satisfies any admission , enrollment , quota , eligibility , membership or other requirement or condition which individuals must meet in order to be provided any services , financial aid , or other benefit provided under the program

Title VII of the Civil Rights Acts prohibits retaliation against an individual for complaining against a faculty member of a educational institution that is a recieptance of federal financial assistance.

Title VI of the Civil Rights Act of 1964 prohibits discrimination based on race, color, or national origin in programs or activities receiving federal financial assistance. All federal agencies that provided grants of assistance are required to enforce the Title VI regulation.

The Title VI regulation prohibits retaliation for filing an OCR complaint or for advocacy for a right protected by Title VI.

(6) Jurisdictional Statement

Pursuant to section 15.002 of the Civil Practice and Remedies (a) except as

otherwise provide by this subchapter of the Texas Civil Practice and Remedies , all

lawsuits shall be brought :

(1) In the county in which all or substantial part of the event or omission giving rise

to the claim occurred ;

(2) In the county of the defendant / respondants place of residence where the event

giving rise to the claim occurred ;

(3) In the county of the defendants / respondants principle place of business where

the event giving rise to the claim occurred ;

In this particular case , the event giving rise to the claim occurred within the

geographic location of the County of El Paso Texas where the defendant /

respondants principle place of business is designated , thereby establishing venue of

jurisdiction in the El Paso County District Court House located at 500 East San

Antonio Avenue El Paso Texas 79901.

With respect to the subject matter jurisdiction of the cause of action , pursuant to

section 15.012 of the Civil Practice and Remedies specifies that cause of actions to

stay the proceedings of an informal proceeding suit shall be brought in the County

in which the informal proceeding is pending.

In this particular case , a faculty member named Ryan Holmes of the University of

Texas at El Paso is pursueing informal disciplinary proceedings against the

petitioner for allegedly violateing university rules , thereby giving rise to the subject

matter jurisdiction of this foregoing injunction against informal proceedings within

the legal context of discrimination.


(7) Statement of the Case

On Febuary 7th , 2012 the appellant filed a grade grievance with the Chairman Dr.

Richard Jarvis for the Student Grade Grievance Committee to complain against

Professor Corrine Peschkas academic dishonesty that was effecting the appellant

grade point average.

On or about Febuary 8th , 2012 the appellant , professor Corrine Peschka , and her

supervisor Dr. Dorthy Ward held a meeting to discuss the appellants grade

grievance for an alternative resolution.

On or about Febuary 10th , 2012 the appellant began exhausting the discrimination

complaint process through the university chain of command to seek redressal of the

professor Corrine Peschkas academic dishonesty.

On or about Febuary 11th , 2012 Dr. Ryan Holmes for the Office of Student Life

emailed the appellant to schedule a meeting to discuss the grade grievance against

professor Corrine Peschkas academic dishonesty.

On or about Febuary 13th , 2012 Dr. Ryan Holmes threatened to retaliate against

the appellant if he seeked the president of the universitys level of attention to

complain against the professor Corine Peschkas academic dishonesty.

On or about Febuary 25 , 2012 after Dr. Ryan Holmes had made his threats to

retaliate against the appellant however the appellant still approached the president

of the university at a leture for writers to seek redressal of the professor Corrine

Peschkas academic dishonesty.

On March 31 , 2012 Dr. Ryan Holmes retaliated against the appellant for talking to

the president of the university about professor Corrine Peschkas academic

dishonesty by fileing frivolous and false disciplinary charges against the appellant.

On or about March 31 , 2012 Dr. Ryan Holmes influenced the campus police

department to issue a trespass warning against the appellant to prevent him from

going on campus to collect student witnesses that would prove Dr. Ryan Holmes

disciplinary charges as false and frivolous.

On April 4 , 2012 Dr. Ryan Holmes held a disciplinary hearing in attempt to expel

the appellant from the university for seeking the president of the university level of

attention to pursue the compliant process against the professor academic

dishonesty.

On April 6 , 2012 the appellant filed a discrimination compliant via email with the

United States Department of Education Office of Civil Rights in Dallas Texas.

On April 10 , 2012 the disciplinary hearing officer named Dr. Harry Mueeswen

indorsed the private interest of Dr. Ryan Holmes to discriminate and retaliate

against the appellant for seeking the presidents level of attention to pursue the

compliant process against professor Corrine Peschkas academic dishonesty , by

upholding the disciplinary charges for the purpose of suspending the appellant

during the summer semester.

On April 11 , 2012 the appellant appealed the decision of the disciplinary hearing

officer named Dr. Harry Mueeswen to the president of the university named Diana

Natalicialo.

On May 16 , 2012 the president of the university discriminated against the

appellant by upholding the decision of the disciplinary hearing officer without

sufficiently conducting an investigation and review of the evidence that was

presented at the disciplinary hearing.

On May 17 , 2012 the appellant filed a discrimination compliant via email with the

Office of Civil Rights for the United States Department of Education in Dallas

Texas against the faculty members of the University of Texas at El Paso that is a

reciepant of federal financial assistance from the Department of Education.

Title VI regulation at 34 C.F.R. & 100.7(e) prohibits faculty members from an

educational institution that are recipients of federal financial assistance from

engageing in intimidateing or retaliatory acts against any person for the purpose of

interfering with any right or privilege secured under the regulation or because the

person has made a complaint or participated in any manner in an investigation or

proceeding brought pursuant to the regulation.

On October 3 , 2013 the faculty member named Ryan Holmes retaliated against the petitioner for submitting a discrimination compliant with the United States Department of Education by pursueing an additional disciplinary charge against the petitioner without just cause.

(8) Statement of Facts

On Febuary 7 , 2012 the instructor Corrine Peschka for the new student entering program entitled University class 1301 under the theme of "Children of the Holocaust" intentionally and knowing committed an act of academic dishonesty by allegeing that the petitioner answered questions in a popquiz wrong when in fact the relators answers were correctly cited from the text of a novel that was the basis of the quiz.

After finding out that some of the students in the class had answered the same question in the same manner that the petitioner had answer the same questions however because the other students answers were counted correct and the petitioner answers were counted wrong therefore the petitioner brought the gradeing error to the attention of the professor Corrine Peschka.

The petitioner specifically told the professor Corrine Peschka that she had counted some of the petitioner's answer wrong which were the same answer that she counted right on another students quiz however the professor Corrine Peschka became annoyed and began to argue with the petitioner by changing the subject to the petitioner class room behavior.

The professor Corrine Peschka falsely alleged that the petitioner had disruptive behavior which impeded on the other students learning ability because the petitioner frequently asked questions about the way she was gradeing the petitioner class assignment during class.

The professor Corrine Peschka also complained that the petitioner had disruptive behavior that impeded on the other students learning ability because one day the petitioner came to class with the flue symptoms and felt like throwing up but could not make it to the bathroom so the petitioner throw up in the classroom trash can. The petitioner told the professor Corrine Peschka that she did not have to change the subject about her gradeing error and she responed by telling the petitioner that she would regrade everyones quiz the following week.

Since then the petitioner felt greatly disliked by the professor Corrine Peschka because she was very annoyed by the petitioners questions during class.

To the extent that the professor Corrine Peschka had immediate relatives whom were using advanced technology with a direct signal to the satellite in outerspace that has the capability of calculateing a genetic code to cause the petitioner Eric Flores severe mental and spinal pain for long durations exceeding calendar days in which was equivalent in intensity to profoundly disrupt the personality and senses of the petitioner while he was trying to concentrate on the class room assignment so as to distort the petitioners mental state of mind to effect his learning ability for the purpose of lowering his grade point average.

Evenmore the petitioners found out that the reason why professor Corrine Peschka began gradeing the petitioners classroom assignments differently from other students was because the professor Corrine Peschka was directly related to the law enforcement police officer that had shot and killed the petitioners brother Javier Flores Junior.

At the same time that the petitioner was attending professor Corrine Peschkas educational course , the petitioner was also fileing several petitions in federal courts to seek criminal prosecution against the law enforcement police officer that had shot and killed the petitioners brother Javier Flores Junior.

As a result professor Corrine Peschka was intentionally useing the case number that was assigned to the petition that the petitioner filed in the federal court to seeked criminal prosecution against the professors law enforcement officer that shot and killed the petitioner brother Javier Flores Junior in which the professor Corrine Peschka assigned as a grade to the petitioners classroom assignments so as to indirectly communicate a threat to effect the petitioner grade point average if the petitioner did not discontinue fileing petitions in the federal courts to seek criminal prosecution against the professor law enforcement officer that shot and killed the petitioner brother Javier Flores Junior.

For example in one of the petitions that the petitioner filed the clerk of the federal court assigned the number 68 to identify the petition in the federal courts docketing system.

The Professor Corrine Peschka used the number 68 as a grade on the petitioners

classroom assignments even though the petitioner had correctly completed the class

assignment.

In another example the clerk of the federal court assigned the number 67 to be able

to identify the another petition that the petitioner had filed in the federal courts

docketing system.

The professor Corrine Peschka used the number 67 as a grade on the petitioner

classroom assignment even though the petitioner had correctly completed the class

assignment.

Moreover whats even more bothering is how the professor Corrine Peschka had

immediate relatives whom wrote the number 20 tweenty in red on the classroom

wall right above from where the petitioner sat throughout the spring 2012 semester.

On the same day that the number twenty 20 appeared on the classroom wall was

the same day that the professor Corrine Peschka assigned the number tweenty as a

grade on the petitioner classroom assignments.

Thereafter so as to emphize on the incident of discrimination involveing the number

(20) twenty , the professor Corrine Peschkas' immediate relatives used advanced

technology with a direct signal to the satellite in outerspace that has the capability

of calculateing a genetic code to profoundly disrupt the personality and senses of a

person named Adam Lanza whom was incarcerated with the petitioner in the State

of Pueblo Colorado , for long durations exceeding calendar days in which was

equivalent in intensity to take physical control of Adam Lanzas' mental state of

mind for the purpose of compelling Adam Lanza into an act of dures by a calculated

procedure to shoot and kill tweenty Sandy Hook school elementary school children

in New Town Connecticut in which was to directly referr to the incident of

discrimination involveing the number twenty written on the class room wall to

include the incident of discrimination involveing the professor immediate relatives

using deadly technology to torture the petitioners newborn nephew so as to casually

connect to the profesors classroom lession about how the german nazi killed new

born jewish children born in the german concentration camps for the purpose of

eliminateing the jewish blood line descendant.

This was done to intimidate the petitioner to discontinue pursueing the

discrimination complaint process against a professor named Corrine Peschka of

white American national origin whom in all probability is of german descendant.

Another incident of discrimination begins when the professor Corrine Peschka

began teaching her students to include the petitioner about how the germans would

kill the new born babies that were bore by jewish prisoners in the german

concentration camps so as to eliminate the jewish blood line descendants from

further existing in the Aryan culture.

At the same time so as to emphasize on the lession , the professors immediate

relatives began using advanced technology with a direct signal to the satellite in

outerspace that has the capability of calculateing a genetic code to cause the

petitioners new born newphew named Cebastian Alva severe abdominal pain for

long durations exceeding calendar days in which was equivalent in intensity to

cause the new born baby to deficate blood during his bowmovement almost leading to his death requiring medical attention from a forensic medical professional in a freeworld hospital named Sierra Medical Center located at 3280 Joe Battle Blvd., El Paso Texas 79936.

These aforementioned circumstantial evidentiary factors were the sole reason why the petitioner brought it to the attention of professor Corrine Peschka that she was gradeing the petitioner classroom assignments differently from other students. Furthermore because the petitioner was complaining about how the professor Corrine Peschka was gradeing the petitioner classroom assignments differently from other students therefore the professors relatives began using advanced technology with a direct signal to the satellite in outerspace that has the capability of calculateing a genetic code to profoundly disrupt the personality and senses of the professor Corrine Peschka while she was trying to concentrate on gradeing the students classroom assignments in which was to take physical control of her mental state of mind to compel her into gradeing the petitioner classroom assignments differently from other students which effected the petitioner grade point average. On Febraury 7 , 2012 the petitioner submitted a grade grievance with Dr.Richard Jarvis Chairman of Student Grade Grievance Committee , to complain that the professor Corrine Peschka had counted the petitioner correct answers on a quiz wrong.

The petitioner also went to the Chairman of the Undergraduate Learning Center Dr.Dorthy Ward to complain that her subordinate professor Corrine Peschka had counted the petitioner correct answer wrong on a quiz.

A couple of days later the petitioner , Mrs.Corrine Peschka , and Dr.Dorthy Ward sat down to discuss the validality of the petitioners answers on the quiz.

Professor Corrine Peshka superceded the correct answer by making assumption of the text of the novel that was the basis of the question on the quiz in which was to allow her to further superceded the petitioner correct answer as wrong for not being a little bit more specific on the answer to the question.

Dr.Dorthy Ward agreed with Mrs.Corrine Peshka judgement and concluded the meeting.

The petitioner felt very unsatisfied and continued to seek the help of other faculty members such as Gary Edens for the Office of Student Life and Dr.Beth Brunk – Chavez the Associate Dean of the College of Liberal Arts.

As a result of the petitioner continueing to pursue the complaint process against professor Corrine Peschka even after meeting with Dr. Dorthy Ward therefore the immediate relatives of Dr. Dorthy Ward began to use advanced technology with a direct signal to the satellite in outerspace that has the capability of calculateing a genetic to cause the petitioner severe mental and spinal pain for long durations exceeding calendar days in which was equivalent in intensity to profoundly disrupt the personality and senses of the petitioner while he was trying to concentrate on the class room assignment so as to distort the petitioners mental state of mind for

the purpose of effecting the petitioners learning ability to lower his grade point average.

A couple of days later Mr.Ryan Holmes from the University Office of Student Life emailed the petitioner to come to his office to discuss some concerns that were brought to his attention.

The next day the petitioner went to Mr.Ryan Holmes which was when he notified the petitioner that other faculty members such as Mrs.Corrine Peschka and Dr.Dorthy Ward were concerned about the way the petitioner was pursueing the complaint process against professor Corrine Peschka.

Mr.Ryan Holmes also wanted to discuss the petitioner behavior in class as a side issue that was of great concern to the professor Corrine Peschka.

At the conclusion of the meeting Mr.Ryan Holmes threatened that there would be further repercussion if the petitioner did not stop complaining against the professor Corrine Peschka or even worsed seeked the university presidents level of attention to address the professor Corrine Peschkas academic dishonesty.

The petitioner then told Dr.Ryan Holmes that if there would be further repercussion against the petitioner for continueing to complain against a University community members' academic dishonesty then it could be constituted as a form of retaliation that was prohibited under the Code of Federal Regulations at 34 CFR 100 and Title VI of the Civil Rights Acts.

Mr.Ryan Holmes then said that the petitioner could look at the situation how ever the petitioner wanted and further warned the petitioner of repercussion if the petitioner continued to complain against professor Corrine Peschka.

The petitioner then told Mr.Ryan Holmes that after their meeting , the petitioner was going to the Presidents Office to report that Ryan Holmes had threatened to retaliate against the petitioner if the petitioner continued to complain against the professor Corrine Peschka.

As a result of the petitioner's intent to continue to complain against the professor Corrine Peschka academic dishonesty even after being warned by Dr. Ryan Holmes therefore the immediate relatives of Dr. Ryan Holmes began using advanced technology with a direct signal to the satellite in outerspace that has the capability of calculateing a genetic code to cause the petitioner severe mental and spinal pain for long durations exceeding calendar days in which was equivalent in intensity to profoundly disrupt the personality and senses of the petitioner while he was trying to concentrate on the class room assignment so as to distort the petitioners mental state of mind for the purpose of effecting the petitioners learning ability to lower his grade point average.

Two weeks later the petitioner was able to personally talk to the University President Daina Natacilio at a speech for the Writers of El Paso Texas where she referred the petitioner to Dr.Gary Edens from the Office of student life to address the petitioner concerns of the professor Corrine Peshka academic dishonesty and

Dr. Ryan Holmes threats of further repercussions if the petitioner continued to

pursue the complaint process against Corrine Peschka.

Two days later Dr.Ryan Holmes keeped his promise of retaliateing against the

petitioner by allegeing that the petitioner was violateing university rules for

continueing to complain against the instructors Corrine Peshka academic

dishonesty.

As a result Dr. Ryan Holmes filed disciplinary charges against the petitioner and

influenced the campus police department to quickly issue a trespass warning

prohibiting the petitioner from comeing onto the property of the university until a

conclusion was reached with regard to the disciplinary charges against the

petitioner in which was to prevent the petitioner from going on to the university

campus to collect witness such as students and other professors whom could testify

about the petitioner professional and schorarly behavior during class and on

campus for the purpose of proveing that Dr. Ryan Holmes disciplinary charges were

false and frivolous which were solely initiated as a retaliatory motive against the

petitioner for pursueing the compliant process against the professor Corrine

Peschka academic dishonesty.

However the petitioner was able to talk to classmates whom agreed to go to the

university to collect witness such as students and professors whom could testify

about the petitioner professional and schorarly behavior in class for the purpose of

proveing that Dr. Ryan Holmes had retaliated against the petitioner by initiateing

false and frivolous disciplinary charges against petitioner for seeking the presidents

level of attention to continue to complian against the professor Corrine Peschkas

academic dishonesty.

As a result the petitioner was able to provide testimony from three student witness

whom could testify about the relator classroom behavior with professor Corrine

Peschka.

The petitioner was also able to provide testimony from other professor whom could

testimony about the petitioners professional and schorarly behavior on campus and

in class.

On April 4 , 2012 Dr. Ryan Holmes for the Office of Student Life held a disciplinary

hearing with regard to the allegation that were made against the petitioner.

Dr. Harry Mueeswen was appointed to preside as disciplinary officer to hear

testimony from Dr. Ryan Holmes and the petitioner to include any witnesses.

Dr.Ryan Holmes retaliated against the petitioner by utilizeing criteria or methods

of administrative disciplinary proceedings which subject the petitioner to

discrimination by attempting to expell the petitioner from the university based on

the actions of another college.

During the disciplinary hearing Dr. Ryan Holmes alleged that the petitioner had

lied on the university admissions application by allegeing that the petitioner had

answered no to the question "has the new student ever attended another college or

university".

But then at the disciplinary hearing the petitioner pointed out that he did not lie on

the university admission application because he did not answer the question " Has

the new student attended another university or college" in which was when Dr.
Ryan Holmes quickly attempted to change the subject by allegeing that the
petitioner had lied on the university student admission application by answering no
to the question "Does the new student have any records on hold in another
university or college".

Dr. Ryan Holmes also alleged that the petitioner was engageing in conduct that
endangers the health and safety of members of the University by persistently
pursueing the complaint process against professor Corrine Peschkas academic
dishonesty.

Dr. Ryan Holmes also alleged that the petitioner was harrasseing members of the
university community by persistently bringing it to the attention of the professor
Corrine Peschka that she was gradeing the petitioners classroom assignments
differently from the other students.

Dr. Ryan Holmes also further alleged that the petitioner was violateing the internal
laws, rules, or regulations of the university because the petitioner was persistently
pursueing the complaint process against professor Corrine Peschkas academic
dishonesty.

Dr. Ryan Holmes provided testimony by professor Corrine Peschka whom lied at the
disciplinary hearing by stating that the petitioners classroom behavior was
explosive and hostile in which impeded on the other students learning ability.
Professor Corrine Peschka also alleged that she felt harassed because the
petitioners was persistently bringing it to the attention of the professor Corrine

Peschka that she was gradeing the petitioners classroom assignments differently from the other students.

As a result the petitioner Eric Flores provided testimony from three students that had also enrolled for the professor Corrine Peschka educational course and whom were present during the time that the complained about discrimination incident of discrimination occurred.

Each of the three student testified by phone stating that the petitioner always displayed a good professional attitude with schorarly behavior by always raiseing his hand to ask questions in regards to the professor Corrine Peschka educational course.

Each student stated that the relator Eric Flores was always dressed in professional attire and never seemed to be disoriented or never display a bad attitude towards professor Corrine Peschka.

Each student testified that the petitioner never displayed hostile or explosive behavior in class or towards the professor Corrine Peschka.

In fact one of the student testified that the professor Corrine Peschka always seemed to have a bad attitude towards the petitioner by responding to the petitioner questions with a sarcasum or not responed at all.

After professor Corrine Peschka and student testimony , Dr. Ryan Holmes then went on to allege that the petitioner behavior was a threat to the members of the university community because of the petitioner hostile and explosive behavior.

As a result the petitioner presented testimony by other professor whom could testify in regards to the petitioner classroom conduct.

The petitioner presented testimony by professor Owen Williamson whom was the petitioner teacher for an English 0310 educational course.

The Professor Williamson Owens testified that the petitioner always appeared in professional attire with a good attitude that demonstrated schorarly behavior by raiseing up his hand to ask questions in regards to the educational course.

Professor Williamson Owen further testified that the petitioner never displayed hostile or explosive behavior in class and never had a bad attitude in which was contridcitory to Dr. Ryan Holmes allegations that the petitioner was a threat to the members of the university community.

The petitioner Eric Flores further presented testimony by Chairman Dr. Richard Jarvis for the Student Grade Grievance Committe whom was present at a lecture for famous writers in El Paso during the time that the petitioner approached the president of the university to seek redressal of the professor Corrine Peschkas academic dishonesty.

The Chairman Dr. Richard Jarvis for the Student Grade Grievance Committee stated that the petitioner Eric Flores appeared to be in professional attire and displayed a good attitude with schorarly behavior during the lecture for famous writer.

The Chairman Dr. Richard Jarvis for the Student Grade Grievance Committee further stated that the petitioner Eric Flores respectfully approached the president

of the university after the lecture to seek redressal for the professor Corrine

Peschkas academic dishonesty.

The Chairman Dr. Richard Jarvis for the Student Grade Grievance Committee

further stated that the petitioner Eric Flores never displayed hostile or explosive

behavior during the lecture in which was contradictory towards Dr. Ryan Holmes

allegation that the petitioner was a threat to the members of the university

community.

After Dr. Richard Jarvis and professor Williamson Owens testimony , Dr. Ryan

Holmes went on to present testimony by phone from a faculty member of the El

Paso Community College Villa Verde Campus whom testified that the petitioner

had enrolled on two previous occasion for educational courses at the community

college but was administratively dropped both time for seeking the community

colleges presidents level of attention which was the same reason why the petitioner

was falsely charged with the university rule violation..

Dr. Ryan Holmes then went on to state based on the faculty members testimony

that the petitioner had lied on his student admission application by allegeing that

the petitioner had answered no to a question that asked if the petitioner had

previously enrolled in another educational institution before attempting to enroll at

that university.

However the petitioner quickly pointed out that he had not answered that

particular question as alleged by Dr. Ryan Holmes because the community college

administration had administratively dropped the petitioner both times that the petitioner had attempted to enroll for educational courses at the community college. After the disciplinary officer Harry Mueeswen reviewed the student admissions application it turned out that the petitioner had not answered the question as alleged by Dr. Ryan Holmes in which prompted Dr. Ryan Holmes to quickly change the subject by allegeing that the petitioner had further lied on his student admission application by answering no to a question that asked the petitioner "if there were any records on hold in another educational institution" before enrolling at the university.

The petitioner quickly pointed out that the reason why he had answered no that there were no other records on hold in another educational institution before enrolling at the university was because the community college had permanently dismissed the petitioner from attending the community college and issued a trespass warning against the petitioner to prevent him from going on to the property of the community college in which hindered the petitioner ability to inquire into whether there were any records on hold at the community college before enrolling at the university.

The fact that the community college had permanently dismissed the petitioner from enrolling at the community college gave the indication that there would not be any records on hold because the petitioner was no longer a student at the community college and would not be a student at the community college in the near future in which was one of the main reasons why the petitioner answered no to that question

in controversy "whether there were any records on hold at any other educational institution".

After the aforementioned testimony the disciplinary hearing was concluded and a decision would be rendered by the disciplinary hearing officer within a time frame of two weeks.

On April 10 , 2012 the disciplinary hearing officer Dr. Harry Mueeswen rendered decision that indorsed the private interest of Dr. Ryan Holmes by allowing the petitioner to finish attending to his educational courses that spring semester however not allowing the petitioner to enroll for the upcomeing summer semester. On April 11 , 2012 the petitioner Eric Flores appealed the disciplinary hearing officers Harry Mueeswens decision to the president of the university.

As a result the hearing officer Dr. Harry Mueeswen , Dr. Ryan Holmes , and Professor Corrine Peschkas' immediate relatives retaliated against the petitioner for appealing the disciplinary officers decision by using advanced technology with a direct signal to the satellite in outerspace that has the capability of calculateing a genetic code to cause the petitioner grandmother Evagelina Salas Mendoza severe heart pain for long durations exceeding calendar days in which was equivalent in intensity to cardiac and respatory failure almost leading to her death requiring medical treatment from a forensic medical professional in a freeworld hospital named Sierra Medical Center located at 3280 Joe Battle Blvd., El Paso Texas 79936.

This was done to establish a casual connection based upon the month and day that the petitioners grandmother Evagelina Salas Mendoza was born (May 7) which was the same day that the petitioner deceased brother Javier Flores Junior was born so as to give an indication that the petitioners grandmother Evagelina Salas Mendoza would be tortured to death just like the petitioners brother Javier Flores Junior for the purpose of intimidateing the petitioner to discontinue the discrimination complaint process against the professor Corrine Peschka academic dishonesty.

The petitioner appeal was based on the following reasons why the professor Corrine Peschka was making false accussations settforth below , in particular;

(1)The professor alleged that the petitioner personality was "explosive and disruptive" to the extent , that the professor cited the following examples allegeing that the petitioner would often "yell out" in class and say things like "that's not fair".

(2)The professor also alleged that the petitioner reached across the professors legs and vomited in a trash can in which caused her to feel disrespected.

(3)The professor also alleged that the petitioner would often "curse" outside of the classroom about his grades and the petitioner often confronted the professor after class in an "abrasive and hostile" manner.

(4)The professor said that at times the petitioner would approach her after class and demand to know who was influencing her to grade his assignments incorrectly.

The petitioner stated in his appeal in response to the professors reasons as stated above, that it is important to keep in mind , that only after the petitioner

respectfully approached the 1301 University professor during class in front of all the student to point out her gradeing error of counting the petitioner correct answers on a quiz wrong and then counting the same answers on another students quiz correct in which was the true reason why the 1301 University Professor promptly changed her attitude towards the petitioner as if she felt offended that the petitioner was pointing out a valid factual occurance of a gradeing error because she clearly stated to the petitioner that she had been teaching for over ten years and that the petitioner should not be telling her how to grade her class assignment , to the extent , that the professor changed the subject to cover up her gradeing error by falsely allegeing that the petitioner personality was explosive and disruptive in order counter the fact that she in deed was treating the petitioners differently from other students by gradeing the petitioners correct answers on a quiz wrong and then counting the same answers on another students quiz correct.

In fact the 1301 University Professor even went to the extent of allegeing that the petitioner would yell out in class and say things like that's not fair only because the 1301 University Professor needed to change the subject to cover up her gradeing error by allegeing that the petitioner had disruptive behavior in her class in order to prevent the petitioner from prevailing upon a discrimination claim against her for treating the petitioner differently from other students.

It is important to note that the petitioners' student witnesses testified at the disciplinary hearing and said that the petitioner would always raise his hand to respectfully ask the professor question involveing her gradeing error and the

petitioner always remained with a professional attitude towards the professor in which only proves that the professor is lieing by saying that the petitioner behavior was disruptive and explosive by often yelling in class and saying things like that's not fair for the purpose of covering up her gradeing errors that were solely enacted against the petitioner to intimidate him to discontinue pursueing criminal charges against her law enforcement relative for shooting and killing the petitioners brother Javier Flores Junior.

It is also important to note that the petitioner student witnesses testified at the disciplinary hearing and clearly stated that the professor was the one with a bad attitude towards the petitioner all the time and that the petitioner was always raiseing his hand in class to ask her questions.

Furthermore in regards to vomiting in the trash can , it is important to note that in this particular class we would always watch documentairies videos of the holocaust and the professor would always turn off the classroom lights to give the students a better view of the movie on the screen and sitt in front of the exist door where light shined from outside the classroom hallway so that the professor could see while she was gradeing the students class room assignments while the students watched the movie in which is the true reason why the petitioner could not leave the class in time to go to the restroom to vomit because the professor was sitting in front of the exist classroom door not allowing the petitioner to leave the class inwhich forced the petitioner to vomit in the trash can next to the exist door.

With respect to the professors allegation stating that the petitioner would often confront her after class in an abrasive and hostile manner , it is important to keep in mind that every other witness that testified at the disciplinary hearing from the students to other professors whom all stated that the petitioner always had a good schorarly professional attitude towards every one in general in which proves the petitioner character as a gentleman and schorarly student to establish probable cause to believe that the professor is only making these allegations of disruptive behavior before and after class only so as to change the subject to cover up the fact that she treated the petitioner differently from other students by gradeing the petitioner correct answers on a quiz wrong and then gradeing the same answers on another students quiz correct.

Furthermore with regard to Dr. Ryan Holmes bringing disciplinary charges against the  petitioner , Dr. Ryan Holmes stated that the first time he met with the petitioner , on February 13, 2012, he decided the petitioner could go back to class and continue the petitioner degree program.

Dr.Ryan Holmes explained that, since the petitioner was makeing his compliant to Dr. Ryuan Holmes after the petitioner had filed the Febuary 7 , 2012 grade grievance therefore Dr. Ryan Holmes could not take any actions because of the petitioner grade grievance.

However because Dr. Ryan Holmes declined to help the petitioner with the professors racial profileing since the petitioner had already filed a grade grievance therefore the petitioner was prompted to tell Dr. Ryan Holmes that the petitioner

would then go through the proper university chain of command to bring the matter
of the professors racial profileing to the president of the university in which was
when Mr. Ryan Holmes threatened to retaliate against the petitioner by stating
that if the petitioner brought the matter up to the president of the university then
there would be further repercussions.

The petitioner then told Dr. Ryan Holmes that he felt as if Dr. Ryan Holmes had
threatened to retaliate against the petitioner for going to the university president to
address the professors racial profileing in which caused Mr. Ryan Holmes to repeat
himself by stating that there would be further repercussions if the petitioner went
and told the president of the university about the professors racial profileing.

Our meeting was concluded on the note that as soon as the petitioner left Mr. Ryan
Holmes office , the petitioner would go straight to the Presidents office to address
the professors racial profileing.

Two weeks later the petitioner meet with the president of the university at a lecture
and asked her if the petitioner could talk to her about a professors academic
dishonesty and she said yes after the lecture.

After the lecture was over the president of the university was in a hurry and
instead referred the petitioner to the Dean of Students Gary Edens for the Office of
Student Life whom is Dr.Ryan Holmes boss and supervisor.

Two days later , Dr.Ryan Holmes keeped his promise of retaliateing against the
petitioner with further repercussion if the petitioner talked to the university
president about the professors academic dishonesty , by initiateing false

disciplinary charges against the petitioner in attempt to expel the petitioner from the university to prevent the petitioner from revealing the professors academic dishonesty wthin the context of racial profileing.

Also it is important to keep in mind that the first time that Dr. Ryan Holmes meet with the petitioner which was on Febuary 13 , 2012 , Dr. Ryan Holmes decided that the petitioner could go back to class and continue his degree plan.

This fact should be considered along with the fact that during the April 5th disciplinary hearing , the professor stated that since the first meeting that was held between Dr. Ryan Holmes and the petitioner , the professor stated that the petitioner behavior had improved , and that she no longer had a problem with the petitioner behavior after their first meeting in which proves that there was no other reason for Dr. Ryan Holmes to initiate disciplinary charges against the petitioner after their first meeting but as a retaliatory motive for talking to the president of the university about the professors academic dishonesty and racial profileing.

The petitioners appeal was also based on the disciplinary hearing officer Dr. Harry Mueeswen decision that violated the hippa privacy rights by requiring that the petitioner attend two counseling session at the University Counseling Center and submit a written report of what was said at the counseling sessions.

The hippa privacy rights under the code of federal regulations specifically state that an entity must prove that a person is a danger to himself or another person before being able to release protected health information about that persons mental health treatment.

In this particular case Dr. Ryan Holmes was unable to prove that the petitioner was a threat to himself or the members of the university community because the petitionr not only presented testimony by the professors but also classmates whom all testified that the petitioner always displayed a professional attitude with schorarly behavior while on campus and in class.

Therefore the disciplinary hearing officer Dr. Harry Mueeswen had no basis to require that the petitioner furnish protected health information about what was said at the counseling session not to withstand that there was no valid reason why to remand a Mexican American student to the university counseling center for seeking redressal of a professor academic dishonesty.

On May 16 , 2012 the president of the university indorse the private interest of Dr.Ryan Holmes retaliatory adversed act of fileing false and frivolous disciplinary charges against the petitioner for pursueing the grievance process against a professors academic dishonesty by upholding the decision of the disciplinary hearing officer Dr. Harry Mueeswen and suspending the petitioner for the summer semester without probable cause.

The evidence of retaliation based on the president of the university decision to uphold the disciplinary charge is within the realm of a chronology of existing factors that tend to give an indication of racial profileing to discriminate and oppress minority student for pursueing the complaint process against recieptant of federal financial assistances.

The chronology of existing factors begin with the 1301 University Professor national

origin which is of white American national origin.

Then the chronology of existing factors goes on to the assignment of the disciplinary officers that was also of white American national origin.

Finally the chronology of existing factors goes on to the University Presidents national origin , which is also of white American national origin.

Each one of the aforementioned three persons played a vitual role in discriminated against the petitioner national origin as a Mexican American student at the University of Texas at El Paso in which was in retaliation against the petitioner for pursueing the complaint process against an employee of white american national origin of an educational institution that is a recieptant of federal financial assistance.

Each one of the aforementioned three persons were of white American national origin inwhich proves that they all had a racially biased intent of approveing one another decision to discriminate and oppress a student of Mexican American national origin for pursueing the complaint process against one of their long time university colleage.

These facts are proven based on the conversation that the petitioner had with the university president before the disciplinary charges were initiated against the petitioner.

The petitioner specifically told the university president that there was faculty members whom threatened to retaliate against the petitioner by intiateing false disciplinary charges for talking to her about a professor academic dishonesty.

Even though the petitioner warned the university president about the faculty members intentions of retaliateing against the petitioner however after the faculty members retaliated against the petitioner by intiateing false disciplinary charges , the university president acted as if the petitioner had not warned her of the faculty members intentions of retaliateing against the petitioner for talking to her about a professor academic dishonesty.

The president of the university acted as if the petitioner had not warned her of the faculty members intentions of retaliateing against the petitioner with the specific intent of indorseing the private interest of her white american university colleages to approve each others decisions to oppress and discriminate a Mexican student for pursueing the complaint process against a white American faculty member.

On or about May 20 , 2012 the petitioner filed a discrimination compliant with the Office of Civil Rights for the United States Department of Education in Dallas Texas.

Title VI regulation at 34 C.F.R. & 100.7(e) prohibits faculty members from an educational institution that are recipients of federal financial assistance from engageing in intimidateing or retaliatory acts against any person for the purpose of interfering with any right or privilege secured under the regulation or because the person has made a complaint or participated in any manner in an investigation or proceeding brought pursuant to the regulation.

On October 3 , 2013 the faculty member named Ryan Holmes retaliated against the petitioner for submitting a discrimination compliant with the United States

Department of Education by pursueing an additional disciplinary charge against the petitioner without just cause.

(9) Summary of Argument

Title VII of the Civil Rights Acts prohibits retaliation against an individual for complaining against a faculty member of a educational institution that is a recieptance of federal financial assistance.

In order for an allegation of retaliation to be sustained, the petitioner must establish that :

(1) The petitioner was engageing in a protected activity ;

(2) The recipient had knowledge of the petitioners protected activity ;

(3) The recipient took an adverse action contemporaneously with or subsequent to the protected activity ; and

(4) There was a causal connection between the protected activity and the adversed action.

If any one of the foregoing cannot be established, retaliation cannot be established. If however, all of the above are established, the inquiry is whether the recipient of federal financial assistance can identify a legitimate nondiscriminatory reason for its action.

The district court shall then determine whether any reason presented by the recipient is merely a pretext for discrimination in the form of retaliation.

A "protected activity" is one in which a person either opposes any practice made unlawful by the statutes enforced by the Civil Rights Acts or a person makes a charge , testifies , assists , or participates in an investigation , proceeding or hearing or otherwise asserted rights protected by the laws enforced by the Civil Rights Acts. If the district court determines that the petitioner has in deed engaged in a protected activity , it will then determine whether the petitioner was subject to an adversed action.

To be an "adversed action" , the recipient's action must significantly disadvantage the petitioner as a student , or his ability to gain the benefit of the program.


(10) Argument

Claims against individuals in there official capacity are claims against the municipalities or institutions that employee them.

The liability of the municipality or governmental entity named University of Texas at El Paso may arise from a decision of a final policy maker responsible for that activity which caused a constitutional deprivation.

Therefore the petitioner Eric Flores must assert a constitutional violation that resulted from a University custom or practice to establish liability against the University of Texas at El Paso for its faculty members acts or omissions that caused the petitioner a constitutional deprivation.

Whereby the University of Texas at El Paso has adopted policy , customs , or practices that authorized its faculty members to intiate disciplinary formal proceeding sagainst students that have violated university rules or regulations. In this particular case the faculty members of an educational institution namewd University of Texas at El Paso have utilized policy , customs , or practice of intiateing disciplinary formal proceedings against the petitioner as a retaliatory adversed act against the petitioner for pursueing the discrimination compliant process in violation of the Civil Rights Act and its implementing regulations at 34 CFR 100.

These facts prove that the petitioners rights as a student to be able to pursue the discrimination compliant process have been violated by a retaliatory adversed act of a faculty member of an educational institution named University of Texas at El Paso whom has utilizeing university customs or practices to file disciplinary formal proceedings against the petitioner for pursueing the discrimination compliant process.

(11) Conclussion and Prayer

Wherefore Primises Considered in conformance with the prerequisites settforth herein the petitioner prays that the El Paso County District Court grant the petitioner a jury trial whom shall determine whether the faculty members of an educational institution named University of Texas at El Paso have retaliated against the petitioner for pursueing the discrimination compliant process with the

United States Department of Education by initiateing false disciplinary charges in

attempt to expel the petitioner from attending the university.

The petitioner further prays that the El Paso County District Court issue a

preliminary injunction to stay the disciplinary formal proceedings intended to be

held by faculty members of an educational institution named University of Texas at

El Paso until the case has been brought before a jury and a finding of facts and law

has be made by the jury.

The petitioner prays for general relief.

                                   Respectfully Submitted ,

                                   Eric Flores , pro se petitioner

                      General Delivery , 8401 Boeing Dr.,

                              El Paso Texas 79910


Pursuant to Penalty of Perjury (28 U.S.C. & 1746) the petitioner Eric Flores hereby

states , declares , and certifies that the foregoing facts settforth in this injunction

against formal proceedings are true and correct to the best of his knowledge.

Case 3:13-cv-00339-DB   Document 1-4   Filed 10/25/13   Page 41 of 42

## CERTIFICATE OF SERVICE

Pursuant to Penalty of Perjury (28 U.S.C. & 1746) the petitioner hereby states ,

declares , and certifies that true and correct copies of the foregoing injunction

against formal proceedings have been hand deliveried to the following respondants /

defendants settforth below , in particular ;

(i)Associate Dean of Student and Director of Judicial Affairs named Ryan Holmes is

a party of interest whom principle place of business is designated at 500 W.

University Avenue , Union East Room 303 , El Paso Texas 79968.


(ii) Julie Cooper administrative assistant for the Director of Judicial Affairs is a

party of interest whoms principle place of business is designated at 500 W.

University Avenue , Union East Room 303 , El Paso Texas 79968.


(iii) University President Daina Natalicio is a party of interest whoms principle

place of business is designated at 500 W. University Avenue , Administrative

Building Room 505 , El Paso Texas 79968.